**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Patrick Dial, | : | Case No. 1:08 CV 01592 |
| Petitioner, | : | |
| v. | : | **MAGISTRATE'S REPORT** |
| | | **AND RECOMMENDATION** |
| Maggie Beightler, Warden, | : | |
| Respondent. | : | |

This case, filed pursuant to 28 U.S.C. § 2254[1], was referred to the undersigned Magistrate

pursuant to Local Rule 72.2[2].  Pending are Petitioner's Petition for Writ of Habeas Corpus (Docket No.

1) Respondent's Return (Docket No. 25) and Petitioner's Traverse (Docket No. 27).  For the reasons that

follow, the Magistrate recommends that the Court deny Petitioner's Petition for Writ of Habeas Corpus.

---

[1]

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
28 U.S.C.A. § 2254 (Thomson/West 2007).

[2]

**Rule 72.2 Assignment and Referral of Matters to Magistrate Judges**
**(a) General.**  The method for assignment of duties to a Magistrate Judge and for the allocation of duties among the several Magistrate Judges of this Court shall be made in accordance with orders of the Court or by special designation of a District Judge.

## I.  JURISDICTION

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the Constitution or laws or treaties of the United States.  *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002))

Petitioner satisfies both prongs of the requirements for habeas jurisdiction.  He was convicted in the Cuyahoga County Court of Common Pleas and he is incarcerated at the Marion Correctional Institution in Marion, Ohio, as a result of his conviction.  Petitioner is in custody for purposes of habeas jurisdiction.

Petitioner alleges that he has been deprived of rights guaranteed him under the Sixth and Fourteenth Amendments.  Such claims, if true, are phrased sufficiently to allege a denial of violation of the Constitution or laws or treaties of the United States.

The Magistrate finds that this Court has subject matter jurisdiction to consider Petitioner's Section 2254 Petition.

## II.  FACTUAL BACKGROUND

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court, the factual findings made by a state court in the direct appeal are presumed to be correct.  *Keith v. Mitchell*, 455 F. 3d 662, 666 (6th Cir. 2006) (*citing* 28 U. S. C. § 2254 (e) (1) (2006)).

The Court of Appeals for the Eighth District, Cuyahoga County, Ohio, found that the circumstances of the crimes are as follows:

> Petitioner and the victim's mother were married and had three of their own children.  Also living with the family was the mother's son by a previous relationship.  The parents' marriage was rocky,

and they moved frequently.  At one point, Petitioner began to drink and to abuse the children physically. When the victim was in the third grade, Petitioner began watching her shower while he masturbated.  The victim did not tell anyone about his behavior.  Petitioner then began touching the victim inappropriately below the waist, including in her private area.  Finally, when she was about ten, he actually penetrated her with his penis.  Again, she did not tell anyone about his actions.

After the family moved to Las Vegas, the mother abandoned the family and left all the children with Petitioner except her son from the prior relationship.  The Petitioner and three remaining children stayed in Las Vegas for a very short period of time after the mother left. While they were still there, Petitioner raped the victim again. At this time, he threatened to kill her if she told anyone what had happened.

Petitioner then moved the family back to the Cleveland, Ohio, area where they lived with alternately his mother or his girlfriend. Petitioner again raped the victim while they were staying at his mother's house.

Petitioner then became involved with another woman, whom he finally married, and he moved his family in with her. When no one else was at home, Petitioner again raped the victim. He forced her to strip naked at knife-point and left the knife within his reach while he raped her. He then forced her to shower while he watched. The next time he raped her he tied her to the bedpost with plastic ties. Again, he used a knife and he threatened to kill her if she told anyone what was happening. Similar incidents continued. Additionally, Petitioner forced the victim to watch as he had sex with another woman. At the time he had sex with this other woman in front of the victim, he was still living with, and in fact would five days later marry, a woman he and his children had been living with for some time.

At no point during this time did the victim tell anyone what was going on. She testified that she was afraid to tell her sister for fear her sister would repeat it and then Petitioner would kill her. She did not tell the woman they were living with, who became her stepmother, because that woman never defended herself against Petitioner's physical abuse, so the victim doubted she would defend another person. She also did not tell a family friend because she was afraid the friend would repeat it to Petitioner, who would then kill her, as he had threatened to do. She did not tell social workers who visited the home for other complaints because after the social workers had observed the physical abuse she had sustained at Petitioner's hands, they had still left her in the home. She feared that they might leave her in the home after she disclosed the sexual abuse and Petitioner would then kill her.

Finally, the victim left home when she was thirteen. At first, she went to stay with a family friend, then with an aunt, and then with another relative.

Two years later, the victim moved to California and was reunited with her mother. The victim got a boyfriend and, as she began to trust the boyfriend, eventually revealed to him what her father had done to her. Although she also told her mother about it several times, her mother did not believe her because the victim only brought it up when she and her mother were arguing. After the mother had been contacted by the children's services agency in the county where the children were living because they were being removed from the father's home, however, the mother asked the victim whether the children were safe at the father's home. The victim again told the mother about the sexual abuse, and the mother finally realized that the victim was telling the truth. At this time, the mother took the victim back to Ohio to report the rapes to the police in the cities in which they had occurred.  The mother also petitioned to obtain custody of the other two children at this time.

*State v. Dial,* 2004 WL 2491672, *1 -2 (2004) (unreported).

3

## III.  PROCEDURAL BACKGROUND

*I.*     *INDICTMENT*

During the January 2002 term, the jurors of the grand jury of the State of Ohio, Cuyahoga County,

indicted Petitioner on thirty two counts as follows:

Count One, unlawful torture and cruel abuse of a child under eighteen years of age, in violation of OHIO REV. CODE § 2919.22;

Count Two, kidnaping in violation of OHIO REV. CODE § 2905.01 with sexual motivation and sexually violent predator specifications under OHIO REV. CODE §§ 2941.147 and 2971.01(I);

Count Three, gross sexual imposition in violation of OHIO REV. CODE § 2907.05 with a sexually violent predator specification;

Count Four, gross sexual imposition, in violation of OHIO REV. CODE § 2907.05 with a sexually violent predator specification;

Count Five, gross sexual imposition with a sexually violent predator specification;

Count Six, gross sexual imposition with a sexually violent predator specification;

Count Seven, attempted rape, in violation of OHIO REV. CODE §§ 2923.02/2907.02 with a sexually violent predator  specification;

Count Eight, kidnaping;

Count Nine, endangering children in violation of OHIO REV. CODE § 2919.22;

Count Ten, kidnaping with a sexual motivation specification;

Count Eleven, rape with a sexually violent predator specification,

Count Twelve, kidnaping with sexual motivation and sexually violent predator specifications;

Count Thirteen, kidnaping with sexual motivation and sexually violent predator specifications;

Count Fourteen, rape with a sexually violent predator specification;

Count Fifteen, rape with a sexually violent predator specification;

Count Sixteen, felonious assault in violation of OHIO REV. CODE § 2903.11;

Count Seventeen, felonious assault;

Count Eighteen, kidnaping;

Count Nineteen, felonious assault;

Count Twenty, felonious assault;

Count Twenty-One, endangering children;

Count Twenty-Two, kidnaping;

Count Twenty-Three, rape with a sexually violent predator specification;

Count Twenty-Four, gross sexual imposition with a sexually violent predator specification;

Count Twenty-Five, dissemination matter harmful to juveniles, in violation of OHIO REV. CODE § 2907.31;

Count Twenty-Six, endangering children;

Count Twenty-Seven, kidnaping with sexual motivation and sexually violent predator specifications;

Count Twenty-Eight, rape with a sexually violent predator specification;

Count Twenty-Nine, kidnaping with sexual motivation and sexual violent predator specifications;

Count Thirty, kidnaping with sexual motivation and sexually violent predator specifications; Count Thirty-One, rape with a sexually violent predator specification; and Count Thirty-Two, rape with a sexually violent predator specification.

(Docket No. 26, Exhibit 1).

**2.     THE VERDICT**

On October 9, 2003, thirteen of the counts were *nolle prosequi*.  The jury returned a verdict of guilty on three counts of endangering children, eight counts of kidnaping, five counts of sexually motivated specifications, three counts of rape and two counts of felonious assault.  The jury found Petitioner not guilty of sexually violent specification in five counts, three counts of rape and three counts of sexually violent predator specifications.  The trial court found Petitioner guilty of all remaining sexual motivation specifications but not guilty of sexually violent predator specifications (Docket No. 26, Exhibits 17).

**3.     THE SENTENCE AND MOTION FOR A NEW TRIAL**

On October 14, 2003, the trial judge adjudicated Petitioner a sexual predator and imposed a prison term in Lorain Correctional Institution of one year each for one count of kidnaping and two counts of endangering children, two years on two counts of child endangering, three years on eight counts of kidnaping and three counts of rape and life imprisonment on each of the three counts of rape, all of said sentences to be served concurrently (Docket No. 26, Exhibits 18 & 19).

Petitioner filed a motion for a new trial on October 23, 2003 (Docket No. 26, Exhibit 21).  The trial court denied the motion for a new trial on January 6, 2004 (Docket No. 26, Exhibit 22).

**4.     APPELLATE REVIEW**

Petitioner filed a notice of appeal in the Court of Appeals for the Eighth Appellate District on

5

November 26, 2003[3] (Docket No. 26, Exhibit 23).  The Court of Appeals affirmed the judgment of the trial court on November 15, 2004 (Docket No. 26, Exhibit 27).

Petitioner served a notice of appeal on the Cuyahoga County Clerk of Courts on January 19, 2005 (Docket No. 26, Exhibit 28, pp. 216/287-217/287).  The notice of appeal was denied on January 28, 2005 (Docket No. 27, p. 3 of 33).

**5.    POST CONVICTION RELIEF**

Petitioner filed an application for delayed reopening of direct appeal on January 10, 2007 (Docket No. 26, Exhibit 28).  The application was denied on June 1, 2007 (Docket No. 26, Exhibit 20).  Petitioner filed a notice of appeal on July 16, 2007, in the Ohio Supreme Court (Docket No. 26, Exhibit 31).  The Supreme Court dismissed the appeal as not involving any substantial constitutional question on September 26, 2007 (Docket No. 26, Exhibit 33).

## IV.  HABEAS CORPUS STANDARD

In determining whether to issue a habeas writ, the standards set forth in the AEDPA govern the district court's review of a state court decision.  *French v. Jones,* 332 F.3d 430, 435-436 (6th Cir. 2003), *cert. denied,* 124 S. Ct. 581 (2003).  The AEDPA only provides habeas  relief for a state prisoner in certain circumstances.  *Id.*  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim--

     (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

------

[3]

Petitioner presented two assignments of error.
    First, defense counsel's performance of his duties was deficient to the extent that he failed to function as counsel. Second, the trial court erred in admitting the expert testimony of Cynthia King (Docket No. 25, Exhibit 24).  .

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* (*citing* 28 U.S.C. § 2254(d) (2001)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

## V. ANALYSIS

Petitioner asserts five claims. First, the trial court committed reversible error when it determined, without an evidentiary hearing, that the motion for leave to file a new trial should be denied. Second, the trial judge forced the jury to deliberate and not surface until a verdict was reached. Third, Petitioner's conviction is against the weight of the evidence. Fourth, trial counsel failed to subpoena and/or conduct a direct examination of his alibi witness. Fifth, there is an underlying thread in his Petition that the Magistrate construes as an ineffective assistance of counsel argument.

Respondent contends that the statute of limitations ran its course more than one year before Petitioner took any action to challenge his conviction or sentence. Respondent further contends that the statute of limitations cannot be tolled as Petitioner's motion for leave to file a motion for a new trial was filed nearly five years after the statute of limitations had ceased running. Simply, Petitioner's claims are time barred.

*Statute of Limitations Standard*

AEDPA imposes a one year statute of limitations for habeas petitions that challenge state court

judgments. *Allen v. Yukins,* 366 F.3d 396, 399 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 2000 (2004). Specifically, a person in custody pursuant to a judgment of state court has one year within which to apply for a writ of habeas corpus. For purposes of this case, the one year period of limitations begins to run from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. 2244(d)(1)(A) (Thomson Reuters/West 2009). Direct review immediately follows trial, generally is constrained by tight, non-waivable time limits, and concludes with finality of judgment. *Lopez v. Wilson,* 426 F. 3d 339, 351 (6th Cir. 2005).

The one year limitation period may be tolled while application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending. *Valentine v. Francis,* 270 F.3d 1032, 1034 (6th Cir. 2001) *cert. denied*, 122 S. Ct. 2626 (2002). The statute is not tolled during the pendency of a petitioner's first federal habeas writ as the writ is not an "application for state post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2). *Duncan v. Walker*, 121 S. Ct. 2120, 2129 (2001).

*Statute of Limitations Applied to This Case*

Here, the statute of limitations began to run on the forty-sixth day after the Court of Appeals rendered its judgment on November 15, 2004, or on December 31, 2004. Even if the Magistrate tolled the statute from January 19 through January 28, 2005, during the pendency of a subsequent appeal, the statute of limitations expired on January 9, 2006. Plaintiff is not entitled to tolling of the statue while his request for post conviction relief was pending as such requests were made after the expiration of the statute. Since Petitioner did not present his claims to the Court until July 2, 2008, approximately two and one half years after the statute of limitations had expired, Petitioner's claims are procedurally barred from habeas review.

8

## VI.  CONCLUSION

In view of the foregoing, the undersigned recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Dated: October 6, 2009

## VII.  NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.

Please be advised that, pursuant to rule 72.3(b) of the local rules for this district, the parties have ten (10) days after being served in which to file objections to said report and recommendation.  A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the sixth circuit court of appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

9